The summaries of the Colorado Court of Appeals published opinions
constitute no part of the opinion of the division but have been prepared by
the division for the convenience of the reader. The summaries may not be
cited or relied upon as they are not the official language of the division.
Any discrepancy between the language in the summary and in the opinion
should be resolved in favor of the language in the opinion.

SUMMARY
June 2, 2022

**2022COA60**

**No. 21CA0574, People in Interest of K.P. — Juvenile Court —
Dependency and Neglect — Civil Protection Orders; Civil
Procedure — Remedial and Punitive Sanctions for Contempt;
Collateral Bar Rule**

A division of the court of appeals addresses the scope of the

collateral bar rule in Colorado. Specifically, the division considers

whether a parent, after being held in contempt for violating

permanent protection orders in a dependency and neglect

proceeding, may challenge those orders as unconstitutional prior

restraints on her right to free speech despite failing to timely appeal

the protection orders themselves. The division answers no. It

concludes that, because the parent failed to timely appeal the

protection orders, and because none of the exceptions to the

collateral bar rule apply, the rule prevents the parent from bringing

such a challenge. The division further concludes that the evidence

was sufficient to support the contempt judgment.

Court of Appeals No. 21CA0574
Arapahoe County District Court No. 19JV158
Honorable Natalie T. Chase, Judge

The People of the State of Colorado,

Appellee,

In the Interest of K.P., L.P., and M.P., Children,

and Concerning C.P., a/k/a K.A.,

Appellant,

and C.P.,

Appellee.

JUDGMENT AFFIRMED

Division II
Opinion by JUDGE YUN
Grove and Graham*, JJ., concur

Announced June 2, 2022

Ronald Carl, County Attorney, Kristi Erickson, Assistant City Attorney, Aurora, Colorado, for Appellee the People of the State of Colorado

Alison A. Bettenberg, Guardian Ad Litem

Ascend Counsel, LLC, Edward Milo Schwab, Denver, Colorado, for Appellant

Sherman & Howard, L.L.C., Richard Bednarski, Colorado Springs, Colorado, for Appellee C.P.

*Sitting by assignment of the Chief Justice under provisions of Colo. Const. art. VI, § 5(3), and § 24-51-1105, C.R.S. 2021.

¶ 1     The juvenile court found C.P., a/k/a K.A. (K.A.), in contempt for violating permanent civil protection orders barring her from discussing her children's dependency and neglect case with most third parties.  At a hearing that occurred several months after it had issued the protection orders, the court entered its judgment of contempt and sentenced K.A. to six months in jail.  K.A. now appeals only the contempt judgment, arguing that the protection orders violated her constitutional right to free speech and that insufficient evidence supported the court's judgment of contempt.

¶ 2     This appeal therefore requires us to determine whether K.A., in appealing the contempt judgment, may collaterally attack the lawfulness of the underlying protection orders.  We conclude that she may not.  Under the collateral bar rule, a party must obey a court order — even an unconstitutional order — unless and until that order is stayed, set aside, or reversed on appeal.  With rare exceptions, a party cannot challenge a court order by violating it. This is so because the orderly and efficient administration of justice would be jeopardized if parties could determine for themselves when and how to obey a court order.

¶ 3    Because K.A. did not timely appeal the protection orders, and because none of the exceptions to the collateral bar rule apply, we conclude that the rule precludes K.A. from collaterally challenging the lawfulness, and therefore the constitutionality, of the protection orders in an appeal of the contempt judgment.  We also reject K.A.'s argument that insufficient evidence supported the contempt judgment.  We thus affirm the judgment.

## I.    Background

¶ 4    This contempt proceeding followed K.A.'s contentious divorce from C.P., the father of their three daughters, K.P., L.P., and M.P., as well as the family's involvement in two dependency and neglect cases.

### A.    Dependency and Neglect Proceedings

¶ 5    In 2017, the year before the divorce became final, the Arapahoe County Department of Human Services filed a petition in dependency and neglect alleging that the father was sexually abusing the two younger girls.  A jury, however, found that the children were not dependent or neglected.

¶ 6    Two years later, the Department filed a second petition, this time asserting that K.A. had coached the oldest daughter into

falsely reporting sexual abuse by her father as part of K.A.'s pattern of emotionally abusing the girls. A jury found all three girls dependent and neglected as to K.A., and the juvenile court ordered her to comply with a treatment plan designed to give her "insight into how [her] behaviors alienated and emotionally harmed her children." K.A. appealed the adjudication, but a division of this court affirmed it. *People in Interest of K.P.*, slip op. at ¶ 1 (Colo. App. No. 19CA1161, Feb. 27, 2020) (not published pursuant to C.A.R. 35(e)).

### B. Protection Orders and Termination

¶ 7  Soon after, in April 2020, K.A. posted a "Petition to Protect CHILDREN!" on the website change.org. In this posting, K.A. alleged that, despite her daughters' disclosure of sexual abuse by their father, protective services, law enforcement, and mental health professionals had all insisted that the girls live with him. The petition included a video of the youngest daughter being interviewed by K.A. and making an outcry of sexual abuse, as well as a video of the oldest daughter's journal entries disclosing sexual abuse by her father — evidence that K.A. had never disclosed to the Department or the police.

¶ 8     In May 2020, the Department moved for a protection order under section 19-1-114(2)(a), C.R.S. 2021. It alleged that K.A.'s posting invaded the children's privacy and showed that "any progress in her treatment plan was feigned" and that she refused to "own[] that she coached her children" into making outcries of sexual abuse against their father. The court agreed that K.A. was not acting in the girls' best interests and granted the protection order (the May protection order). Among other things, the court required K.A. to take down the petition, prohibited her "from posting on social media sites information related to the Minor Children and the allegations of abuse or neglect associated with this case" (including doing so through third parties), and obligated her to provide the Department with the videos attached to the change.org petition. The court warned that her failure to comply with the order could "result in contempt proceedings and up to six months in jail."

¶ 9     But K.A. refused to take down the petition, added copies of the girls' handwritten notes when the website hosting the video took it down, and continued to post about the allegations on social media, as well as on her own website. As a result of K.A.'s defiance of the May protection order and her failure to engage in her treatment

4

plan, the Department filed two motions: one for a contempt citation against K.A., and another to terminate her parental rights. The juvenile court scheduled a hearing on both matters over two days in late August 2020.

¶ 10 On the first day, the court found beyond a reasonable doubt that K.A. had willfully violated the May protection order. It delayed sentencing her for contempt until after the termination hearing, which was set to continue through the next day. K.A., however, failed to appear (or to have counsel appear on her behalf) the following morning, so the court issued a bench warrant and did not proceed with sentencing. At the end of the hearing, the court terminated K.A.'s parent-child legal relationships with her three daughters. The court also sealed the court records, stating that no party was to release any filing in the case to any third party or ask other people to post anything on the internet regarding the case.

¶ 11 Immediately after the termination hearing, the father moved for a civil protection order in the same case. The juvenile court issued a temporary protection order that same day and scheduled a hearing on a permanent protection order for September 2020. After the hearing, the court entered a permanent civil protection order

under section 13-14-106, C.R.S. 2021, restraining K.A. from contacting the three girls or their father, who had custody (the September protection order). The order adds that K.A. is "not to talk to 3rd party about case except for [attorneys] or to use 3rd party to post on internet."

¶ 12 K.A. then filed a C.R.C.P. 59 motion, asking the juvenile court to reconsider the breadth of the September protection order. Specifically, K.A. argued that the order's "language prohibiting her from talking to any third party about th[e] case, other than her attorney," was "excessively broad" and violated her "constitutionally protected rights."

¶ 13 The juvenile court agreed — at least in part. It narrowed the September protection order so that K.A. could communicate about the case with her therapists and doctors, as well as her attorneys (the December protection order). The December protection order says,

> Because this Court is certain that more harm will occur from future postings regarding the allegations of sexual abuse in this case, the Court first ORDERS that [K.A.] shall be restrained from posting any information related to the allegations of abuse or neglect which were investigated during this case on

6

any website or social media outlet. This includes posting through a third party, which is subject to the provisions outlined above, as [K.A.] may be held liable for directing any third party to post such information. Further, the Court further ORDERS that [K.A.] shall be restrained from discussing the allegations of abuse or neglect which were investigated during this case or providing any case-related information, including but not limited to any documents within the case file, to any third party who does not have a legal duty of confidentiality to [K.A.] Thus, [K.A.] may discuss this case with her attorneys, therapists, or doctors, but she may not direct these third parties to release or disseminate case-related information to any other third party or to the public.

¶ 14    Though the court recognized K.A.'s First Amendment concerns, it concluded that the December protection order passed constitutional muster. The order, the court explained, was the least intrusive means necessary to serve the government's compelling interests in protecting domestic abuse victims and the privacy of children involved in dependency and neglect proceedings. The court further found that, "based on the history of this case and [K.A.'s] repeated and relentless dissemination of the false allegations of abuse, Father and all three children will undoubtedly

7

suffer great, grave, and certain harm as a result of continued expression."

## C.     Contempt Proceeding

¶ 15     On December 31, 2020, the father moved for a contempt citation against K.A.  He alleged that an article published three days earlier in an online edition of the Colorado Springs Gazette includes details about the dependency and neglect case that K.A. must have shared, either directly with the author or through a third party, in violation of the juvenile court's protection orders.

¶ 16     The article, titled "A sick mom, alone in a cell, on Christmas Eve," does not include anyone's name, but it does include, among other things, (1) K.A.'s experience of having COVID-19 in jail[1]; (2) K.A.'s "unwavering belief" that the father sexually abused the children; (3) that K.A. is in jail for seventeen months for violating a "gag order" in the case; and (4) that K.A. wrote to her friend, "A system shouldn't be able to destroy someone's life.  Punished for protecting, for speaking truth, for loving my daughters so much — I would do anything for them."  Even though the case was sealed, the

---

[1] K.A. was serving time in jail on prior contempt citations that are not part of this appeal.

week after the article's publication, the juvenile court received two voicemail messages urging it to release K.A. from jail.

¶ 17    The juvenile court held a hearing on the contempt citation over two days in March 2021.  The father and K.A.'s friend testified. Over K.A.'s objection, the court admitted into evidence seven recordings of jail phone calls between K.A. and her friend during which, the father argued, K.A. had shared information in violation of the protection orders.  The court also admitted the Gazette article and a letter K.A. had written to her friend from jail.

¶ 18    On the second day of the hearing, the court found, beyond a reasonable doubt, that K.A. had willfully disobeyed its orders not to speak about the case with any third party who did not owe a duty of confidentiality to K.A.  As pertinent here, the court found the following:

- the Gazette article includes a quote from K.A., as well as information that the author could have learned only from K.A., namely the length of K.A.'s jail sentence;

- the article mentions the allegations of abuse;

- the article is not, as K.A. argued at the hearing, about the incidence of COVID-19 in the jail, which would have

been "appropriate," but, rather, is "about one individual[,] . . . about her circumstances of being in the jail";

- several of the recorded phone calls imply either that the author of the Gazette article was in the room with K.A.'s friend or that the friend would pass information to the author;

- the recordings referred to K.A.'s attorneys moving to withdraw, "which is part of this case, [and] which is in direct violation of" the orders;

- K.A. talked about asking for in-home detention as an alternative to incarceration, "which is a direct pleading that was put into this case," in violation of the orders;

- K.A. and her friend talked about "the unfairness of this case, . . . in direct violation of" the orders; and

- the two also talked about the court "specifically" "numerous" times, and they discussed that the court "specifically ha[d] violated the numerous rights of" K.A.

The juvenile court then sentenced K.A., who was already serving seventeen months in jail on three other contempt citations, to an additional six months.

¶ 19    K.A. now appeals the juvenile court's judgment of contempt and her six-month jail sentence.

## II.    Analysis

¶ 20    K.A. argues that the juvenile court's September and December protection orders violated her First Amendment rights and, therefore, that she cannot be punished for violating them.  She also argues that insufficient evidence supports the juvenile court's contempt judgment.  After discussing the standard of review, we address each argument in turn.

### A.    Standard of Review

¶ 21    A finding of contempt is within the juvenile court's discretion and may not be reversed absent an abuse of that discretion.  *People in Interest of K.S-E.*, 2021 COA 93, ¶ 18.  A court abuses its discretion when its ruling is manifestly arbitrary, unreasonable, unfair, or contrary to law.  *Id.*

¶ 22    "However, the lawfulness of a district court's order — the violation of which may give rise to a finding of contempt — is

11

subject to de novo review." *Id.* And we review the record de novo to determine whether the evidence was sufficient to sustain the contempt judgment. *Clark v. People*, 232 P.3d 1287, 1291 (Colo. 2010).

### B. K.A.'s First Amendment Challenge

¶ 23 K.A. argues that the September and December protection orders were unlawful because they were impermissible prior restraints on her right to free speech. The father counters that K.A. failed to timely appeal the September and December protection orders and, as a result, cannot now challenge their constitutionality. We agree with the father.

¶ 24 Although K.A. did not appeal the protection orders, she did timely appeal the contempt order. *See* C.R.C.P. 107(f) ("For the purposes of appeal, an order deciding the issue of contempt and sanctions shall be final."). And because the juvenile court's contempt judgment was based on its finding that K.A. willfully violated the protection orders, our review of the contempt judgment necessarily implicates the question of whether the protection orders were constitutional and thus lawful. *See* C.R.C.P. 107(a)(1)

(defining contempt to include "disobedience . . . by any person to . . . any lawful . . . order of the court").

¶ 25    But that does not end our inquiry regarding whether the protection orders are reviewable. Under the collateral bar rule, a party generally must comply with even an unlawful order or risk being held in contempt because

> it is fundamental to our legal system that "all orders and judgments of courts must be complied with promptly. If a person to whom a judge directs an order believes that order is incorrect the remedy is to appeal, but, absent a stay, he must comply promptly with the order pending appeal. Persons who make private determinations of the law and refuse to obey an order generally risk criminal contempt even if the order is ultimately ruled incorrect."

*People v. Coyle*, 654 P.2d 815, 820 (Colo. 1982) (quoting *Maness v. Meyers*, 419 U.S. 449, 458 (1975)); *see also K.S-E.*, ¶ 35.

¶ 26    The United States Supreme Court's decision in *Walker v. City of Birmingham*, 388 U.S. 307 (1967), illustrates this principle. There, Birmingham officials obtained an injunction prohibiting Dr. Martin Luther King, Jr., and other civil rights protesters from parading without a permit. *Id.* at 308. Rather than appealing the injunction, the protesters disobeyed it. *Id.* They were subsequently

13

charged with violating the injunction, fined, and sentenced to jail. *Id.* at 311-12. The Court noted that the ordinance, which provided the basis for the injunction, "unquestionably raise[d] substantial constitutional issues" and that "[t]he breadth and vagueness of the injunction itself would also unquestionably be subject to substantial constitutional question." *Id.* at 316-17. Nonetheless, the Court ruled that the protesters could not collaterally raise those constitutional issues in the contempt proceedings. *Id.* at 317.

¶ 27 The Court found it significant that the protesters had not sought to appeal the order they violated. *Id.* at 318-19. The Court declared, "[t]his case would arise in quite a different constitutional posture if the [protesters], before disobeying the injunction, had challenged it in the Alabama courts, and had been met with delay or frustration of their constitutional claims." *Id.* at 318. Thus, despite the potential illegality of the injunction, the Court upheld the protesters' convictions because the protesters "were [not] constitutionally free to ignore all the procedures of the law and carry their battle to the streets." *Id.* at 321. The Court observed that "no man can be judge in his own case, however exalted his

14

station, however righteous his motives, and irrespective of his race, color, politics, or religion." *Id.* at 320-21.

¶ 28     We similarly conclude that, because K.A. did not timely appeal the underlying protection orders when they became final, the collateral bar rule precludes her from challenging the constitutionality of the orders in her appeal of the contempt judgment. *See* § 19-1-104(7), C.R.S. 2021 ("If the civil protection order is made permanent pursuant to the provisions of section 13-14-106, the civil protection order remains in effect upon termination of the juvenile court action."). While we acknowledge that K.A. has raised substantial constitutional issues regarding the protection orders, the juvenile court's order "must be obeyed by the parties until it is reversed by orderly and proper proceedings." *United States v. United Mine Workers of Am.*, 330 U.S. 258, 293 (1947); *see also State v. Baize*, 2019 UT App 202, ¶¶ 12-14 (collateral bar rule precludes prior-restraint and vagueness challenges to a civil protection order in a prosecution for violating the order). Because K.A. decided to disobey the protection orders rather than challenge them on appeal, she cannot collaterally raise those constitutional issues in this appeal.

¶ 29    Nor can we conclude that this case falls under any of the exceptions to the collateral bar rule.

¶ 30    First, if the issuing court lacks subject-matter jurisdiction over the underlying controversy or personal jurisdiction over the parties to it, then its order may be violated without the imposition of a contempt sanction. *In re Novak*, 932 F.2d 1397, 1401 (11th Cir. 1991). K.A. has raised no such argument here. And the juvenile court had subject matter jurisdiction to enter civil protection orders under section 19-1-104(7).

¶ 31    Second, if no "adequate and effective remedies exist for orderly review of the challenged ruling," then "the accused contemnor may challenge the validity of the disobeyed order on appeal from his criminal contempt conviction and escape punishment if that order is deemed invalid." *Novak*, 932 F.2d at 1401. But as discussed above, K.A. had an adequate and effective remedy to challenge the protection orders — an appeal. And K.A. was aware of this remedy in December 2020 because she discussed with her friend the possibility of hiring a First Amendment expert and appealing the protection orders. She just did not seek that remedy.

¶ 32 Third, the Supreme Court has recognized an exception to the collateral bar rule when compliance with an order "could cause irreparable injury." *Maness*, 419 U.S. at 460; *see also K.S-E.*, ¶ 37 ("[I]f an order is found to be unlawful under the Fifth Amendment, and if obedience to the order carries with it a substantial risk of irreparable harm, a party's failure to comply with the order cannot support a finding of contempt."). "Although several commentators have argued for the application of the *Maness* exception to deliberate violations of ex parte injunctions restraining First Amendment speech rights, thus far, the exception has not [been] extended beyond the limited confines of [the] self-incrimination [context]." *In re Establishment Inspection of Hern Iron Works, Inc.*, 881 F.2d 722, 728 (9th Cir. 1989) (citations omitted); *see also United States v. Hendrickson*, 822 F.3d 812, 819 (6th Cir. 2016) (Although "the order implicates [the contemnor's] First Amendment rights, it does not present the type of scenario that might rise to the level of an irretrievable surrender of a constitutional guarantee.").

¶ 33 Finally, "court orders that are transparently invalid or patently frivolous need not be obeyed." *Novak*, 932 F.2d at 1402. But to protect the judiciary's dignity and authority, "we must indulge . . . a

heavy presumption in favor of the validity of every court order." *Id.* at 1403. "Only when there is no colorable, nonfrivolous argument to support the order being reviewed should a contemnor be excused from his disobedience of the order." *Id.* We cannot say that no colorable, nonfrivolous argument supports the validity of the juvenile court's protection orders. *See In re Marriage of Newell*, 192 P.3d 529, 536 (Colo. App. 2008) (concluding that a parent's exercise of free speech that "threatened the child with physical or emotional harm, or had actually caused such harm," could establish a state interest sufficiently compelling to curtail the parent's free speech rights).

¶ 34     For all these reasons, we conclude that K.A. cannot collaterally challenge the constitutionality of the protection orders.

## D.     K.A.'s Sufficiency of the Evidence Challenge

¶ 35     K.A. next argues that the evidence was insufficient to support the juvenile court's contempt judgment. Specifically, K.A. argues that the evidence did not establish that she (1) had knowledge of the September and December protection orders or (2) willfully refused to comply with those orders. We are not persuaded.

¶ 36     Punitive sanctions — the type imposed against K.A. — "are criminal in nature and are designed to punish 'by unconditional fine, fixed sentence of imprisonment, or both, for conduct that is found to be offensive to the authority and dignity of the court.'" *K.S-E.*, ¶ 24 (quoting *In re Marriage of Cyr*, 186 P.3d 88, 91 (Colo. App. 2008); *see also* C.R.C.P. 107(a)(4). Punitive sanctions must be supported by factual findings establishing beyond a reasonable doubt that "(1) a lawful order existed; (2) the contemnor had knowledge of the order; (3) the contemnor had the ability to comply with the order; and (4) the contemnor willfully refused to comply with the order." *People ex rel. State Eng'r v. Sease*, 2018 CO 91, ¶ 23.

¶ 37     In analyzing the sufficiency of the evidence supporting the juvenile court's contempt judgment, we consider "whether the relevant evidence, both direct and circumstantial, when viewed as a whole and in the light most favorable to the [father], is substantial and sufficient to support a conclusion by a reasonable mind that [K.A.] is guilty of the [contempt] charge beyond a reasonable doubt." *Clark*, 232 P.3d at 1291 (citation omitted). We "may not 'act as a trier of facts to ascertain the sufficiency of evidence to support a

contempt charge. Where the trial court has jurisdiction, and regularly pursues its authority, and there is evidence of contempt, its decision on the facts is conclusive.'" *In re Marriage of Herrera*, 772 P.2d 676, 678 (Colo. App. 1989) (quoting *Wall v. Dist. Ct.*, 146 Colo. 74, 80, 360 P.2d 452, 455 (1961)).

¶ 38 Viewing the evidence in the light most favorable to the father, we conclude that the evidence was sufficient to support the court's findings.

¶ 39 First, the record supports the juvenile court's finding that K.A. was informed of the protection orders through the court and her attorneys. K.A. was present at the hearing on September 23, 2020, when the court announced the terms of the September 2020 protection order, and her attorneys sought reconsideration of that order under C.R.C.P. 59. The court's ruling on K.A.'s Rule 59 motion and the amended protection order were served on K.A.'s counsel in December 2020.

¶ 40 Additionally, K.A. repeatedly said during her phone conversations from jail that she "can't talk about that" — statements that K.A. asserts evidenced her attempt to comply with the protection orders. K.A. could not attempt to comply with orders

of which she was unaware, so this evidence supports the juvenile court's finding that she was in fact aware of the orders. And while K.A. claims these phone calls occurred before the issuance of the December protection order, and thus before she became aware of it, the record reflects that some of the conversations occurred after that order. The record therefore supports the juvenile court's finding that K.A. was aware of the protection orders.

¶ 41 Second, the record supports the juvenile court's finding that K.A. willfully violated the protection orders.[2] The Gazette article includes a quote from K.A., as well as information that the author could have learned only from K.A. In several recorded phone calls from jail, K.A. talked with her friend about working with the author of the Gazette article. Specifically, K.A. told her friend to "[s]tay

---

[2] The September protection order prohibited K.A. from speaking with third parties (except for her attorneys) about the dependency and neglect case or from using third parties to post information about the case on the internet. That order was in effect and enforceable until the juvenile court issued the December protection order, which modified the earlier order only slightly. The December protection order contained the same proscriptions as the September order, except that the December order allowed K.A. to communicate with third parties with whom she had a confidential relationship (e.g., doctors, therapists, and attorneys). The court found that K.A. violated these orders during several phone calls with her friend between mid-October and the end of December 2020.

21

with" the author and "see if maybe you can make that work." In another call with K.A., the friend implied that she had the author of the Gazette article in the same room with her, saying that "good things" were happening. And K.A. discussed with her friend several filings in the case, such as her request for in-home detention and the withdrawal of her attorneys, in violation of the protection orders.

¶ 42    Although K.A. argues that her jail phone calls show that she was trying to comply with the protection orders, the record supports the juvenile court's contrary conclusion. The court found that K.A.'s behavior was indicative of someone who was surreptitiously trying to get around the court's orders. For instance, the court found that K.A.'s letter to her friend directed the friend to communicate with her in a manner that would not be detected. When, as here, "the evidence is conflicting, a reviewing court may not substitute its conclusions for those of the trial court merely because there may be credible evidence supporting a different result." *In re Estate of Foiles*, 2014 COA 104, ¶ 19.

¶ 43    We therefore conclude that the juvenile court did not abuse its discretion by finding K.A. in contempt.

### III.    Conclusion

¶ 44    For these reasons, we affirm the juvenile court's judgment.

The father's request for costs must be sought in the juvenile court.

*See* C.A.R. 39.

JUDGE GROVE and JUDGE GRAHAM concur.